**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT LEXINGTON**
**CIVIL ACTION NO. 14-51-DLB-JGW**

**KEVIN RAIFORD**                                                             **PETITIONER**

**V.**

**GARY BECKSTROM, WARDEN**                                    **RESPONDENT**

**REPORT AND RECOMMENDATION**

On February 19, 2014 the Clerk of Court filed petitioner Kevin Raiford's pro se petition for habeas corpus pursuant to 28 U.S.C. §2254. Doc. 1. Respondent has filed a response in opposition, to which petitioner has filed a reply. *See* Docs. 8, 13. After having examined the record and applicable law, the Court recommends that the petition be denied.

**Factual and Procedural History**

In 2005 petitioner was convicted in the Fayette Circuit Court of "first-degree robbery, receiving stolen property over $300, and being a persistent felony offender in the first-degree. In accordance with the jury's recommendation, the trial court sentenced Raiford to 35 years in prison." *Raiford v. Commonwealth*, 2006 WL 2455987, at *1 (Ky. Aug. 24, 2006). Petitioner appealed, raising as his sole argument his contention that the trial court erred in denying his motion for a new trial "after the complaining witness on the robbery charge notified the Commonwealth's Attorney after the trial but before final sentencing that he recognized one of the jurors as a customer of his [the complaining witness's] gas station [which was the site of the robbery]." *Id.*

Because petitioner raises a similar issue in his §2254 petition the Court sets forth at length the relevant facts, as related in the Kentucky Supreme Court's opinion:

For the time period of around July 2003 to August 2004, the juror, Donna Holland (juror number 746), had been a customer of the gas station that Andy Aullman owned and where he also worked. Of further coincidence, on December 15, 2004, just before Aullman testified at Raiford's trial, he took several bad checks written to his station to the office of the Commonwealth's Attorney for prosecution. Holland had written two of those checks totaling $600.

During the *voir dire* before impaneling the 12-member jury, the Commonwealth's Attorney informed prospective jurors of the witnesses whom she would call. The purpose of reading the names of the witnesses was to determine if anyone knew any of the witnesses, and, if so, to allow the attorneys and the court to explore the nature of the relationship and ascertain any biases. The Commonwealth's Attorney stated that she would call Andy Aullman who owns the Marathon Gas Station on South Broadway.

After the Commonwealth's Attorney read her witness list, the trial court followed up and asked if any members on the panel recognized any of those names as persons with whom he or she might have had an association or dealings in the past. Donna Holland, who eventually became a juror, did not respond that she knew Andy Aullman. Nor did she respond when the trial court asked if anyone recognized the Marathon Gas Station on South Broadway, where the robbery occurred.

After the trial, but before final sentencing, the office of the Commonwealth's Attorney served Donna Holland with notice of the check charges. In response to the notification, Holland contacted Aullman on December 18, 2004. She told him that she had filed Chapter 13 bankruptcy, and she believed that he had been listed as a creditor and that the checks had been taken care of. She asked him if she could make payments to him, but he told her that he wanted to proceed with the prosecution. . . .

Four days after speaking with Holland, Aullman contacted the Commonwealth's Attorney who had prosecuted Raiford's case to notify her of his contact with Holland. In turn, the Commonwealth's Attorney notified Raiford's attorney and the trial court. Raiford's attorney made a motion for a new trial on the ground of undisclosed juror bias.

The trial court heard Raiford's motion on February 7, 2005, and conducted an evidentiary hearing. During the evidentiary hearing, Raiford called Aullman and Holland to testify. . . .

Aullman testified that he recognized Holland when he was testifying in Raiford's trial. He recognized her as a customer of the Marathon station. Aullman cashed her payroll and personal checks every couple of weeks, for which he would charge a fee of two percent. Sometimes, she would ask him to hold her personal checks for a couple of days before he deposited them, and he would do as she asked.

Aullman and Holland never engaged in more than a typical cashier-customer conversation. Aullman did not call her by name, and he could not recall if she called him by name. The last time she had been in the station was about six months ago, which was July or August of 2004. At that time, he cashed two of

> Holland's personal checks, which were each in the amount of $300. Aullman later discovered that both checks were bad.
>
> Holland recognized Aullman by sight when he testified at Raiford's trial. She did not, however, recognize his name when asked during *voir dire* as she only knew Aullman by the nickname that she heard her co-workers use, which was "Scrap." Nor did she recognize the address of the Marathon station because there were several Marathon stations on South Broadway, and no one provided the cross-street, which would have triggered her memory.
>
> Once she recognized Aullman at trial, Holland did not believe she needed to alert the court because she reflected back on the *voir dire* proceedings and the follow-up questions asked of a member of the panel after responding that he or she knew a witness. The follow-up questions typically related to whether the juror believed that he or she could be fair and impartial in light of knowing a witness. Because Holland believed that she could still be fair and impartial, she did not alert the trial court that she knew Aullman.
>
> At the time of Raiford's trial, Holland was not aware that the checks she cashed at the Marathon station were outstanding and that she owed money to Marathon. She only thought something about her circumstances with Aullman after the Commonwealth's Attorney's office served her with notice of the check prosecution.

*Id.* at *1-2.

After conducting an evidentiary hearing on petitioner's motion for new trial, the trial court made two important findings: "(1) . . . Holland did not recognize Aullman's name or the particular Marathon station when read during *voir dire;* and (2) . . . Holland did not do anything to conceal any bias against Raiford on the basis of her relationship with Aullman." *Id.* at *2. After citing a United States Supreme Court case outlining the standard for determining juror bias, the Kentucky Supreme Court held that the juror "was mistaken, not dishonest." *Id.* at *3. The court then held that "[e]ven if Holland became aware at a later point in the trial that she knew Aullman and had cashed checks at his Marathon station, the trial court concluded that her failure to advise the court of such a relationship was not done in an effort to conceal any bias. This is a matter left to the trial court's sound discretion." *Id.* at *4.

In August 2007, petitioner filed a motion for state post-conviction relief pursuant to Kentucky Rule of Criminal Procedure ("RCr") 11.42, based on claims of ineffective assistance

3

of counsel. The trial court denied the motion without a hearing and petitioner appealed. The Kentucky Court of Appeals affirmed in part and reversed and remanded in part. *Raiford v. Commonwealth*, 2010 WL 2428071 (Ky.App. June 18, 2010). Two issues discussed in that opinion are relevant to the pending §2254.

First, petitioner claimed that counsel was ineffective for failing to seek a jury instruction for second-degree robbery. The Kentucky Court of Appeals held that the trial court properly denied that ineffective assistance of counsel claim because "[t]he evidence did not support such an instruction because [petitioner] used a knife during the robbery and threatened the store clerk with it."[1] *Id.* at *2. The second issue germane to the §2254 involved petitioner's claim that counsel was ineffective for not letting him (petitioner) testify at trial. The Court of Appeals held that claim could not be determined from the face of the record and, consequently, it reversed and remanded with instructions to hold an evidentiary hearing on that issue. *Id.* at *3-4.

In March 2011, the trial court conducted the mandated evidentiary hearing, after which it denied petitioner's RCr 11.42 motion. Petitioner again appealed to the Kentucky Court of Appeals, arguing anew "that he was denied his right to effective assistance of counsel because his attorney did not allow him to testify at trial." *Raiford v. Commonwealth*, 2013 WL 132578, at *1 (Ky.App. Jan. 11, 2013). In its opinion, the Kentucky Court of Appeals summarized the relevant testimony at the evidentiary hearing as follows:

> At the hearing, Raiford testified that he discussed his right to testify with his counsel and believed that he would testify. Raiford indicated that he realized he would not testify when his attorney informed the court that such was the case. On cross-examination, Raiford admitted that he never informed the court that he wanted to testify. Raiford also admitted that during the sentencing phase he had new counsel and, although he addressed the court directly, never indicated that his counsel would not let him testify. Despite this fact, Raiford informed the court

---

[1] The action the Court of Appeals construed as a threat was the robber having tapped the knife on the counter and raised his voice when the store clerk refused an initial request for money from the cash register.

4

> that, had he been given the chance to testify on his own behalf then he would have revealed how he came to be in the Honda Accord he used as a getaway car.
>
> Raiford's trial counsel, the Honorable Herb West, also testified at the hearing. Mr. West indicated that he advised Raiford not to testify in part because he was a convicted felon, a fact that would have undoubtedly been revealed on cross-examination. Mr. West also testified that while preparing for trial Raiford informed him that there was an alternative perpetrator, although further investigation concerning this issue did not lead anywhere. Mr. West noted that Raiford was captured in the getaway car within ten to fifteen minutes after the crime and believed Raiford's testimony would not add to the case. While Mr. West did not specifically remember Raiford insisting on testifying during the trial, it was his practice to put such matters on the record. It was Mr. West's practice that if his client, in this case Raiford, had been adamant in his desire to testify then Mr. West would have approached the bench and told the judge that, contrary to his advice, Raiford wished to take the stand.
>
> At the close of the hearing, the circuit court judge conducted a full review of the record and found that not only did Mr. West's advice regarding Raiford's testimony amount to sound trial strategy, but also that at no point did Raiford inform the court of his desire to testify. The court also determined that Raiford's testimony would have little credibility in light of the strong evidence presented against him. Furthermore, the court determined the testimony of Raiford's attorney to be credible.

*Id.* at *1-2.

The Court of Appeals affirmed the trial court, holding that "[a]fter careful consideration of the record, as well as the testimony presented at the hearing, the circuit court determined that Raiford was not adamant in his desire to testify. The circuit court's determination is supported by substantial evidence." *Id.* at *2. The court then noted that "the record lacked any indication that [petitioner] insisted on testifying. In fact, Raiford let the court know on several occasions when he wanted something, including when he had a headache. In other words, he was outspoken and not complacent during the trial of the case." *Id.* at *3. The court concluded by stating that petitioner "presented no evidence at the hearing regarding the testimony he would have presented at trial" and, as a result, had "failed to establish that the result of the trial would have been different had he testified[,] . . . particularly . . . given the strong evidence presented against him." *Id.*

The Kentucky Supreme Court denied petitioner's motion for discretionary review in November 2013. Petitioner then filed the pending §2254 petition in February 2014, raising three issues.[2] First, he contends the Kentucky Supreme Court unreasonably applied federal law in affirming the trial court's conclusion that petitioner had not shown juror bias. Doc. 1-1, p. 3. Second, petitioner contends the Kentucky Court of Appeals (and trial court) unreasonably applied federal law by holding that defense counsel was not ineffective for failing to request a jury instruction on second-degree robbery. *Id.* at p. 7. Finally, petitioner contends the Kentucky Court of Appeals unreasonably applied federal law when it determined that trial counsel was not ineffective in regards to petitioner not having testified at trial. *Id.* at p. 13. Respondent filed an answer and brief in opposition in May 2014 (doc. 8), to which petitioner filed a reply on June 30, 2014. Doc. 13. The matter is thus ripe for adjudication.

**Analysis**

*Standard of Review*

If a claim raised in a §2254 petition was adjudicated on the merits in state courts, a federal court may grant a habeas petition only if "the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) was based upon an unreasonable determination of the facts in light of the evidence presented to the state courts." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003).

In 2011 the Supreme Court reaffirmed the principle that state court decisions are entitled to considerable deference in §2254 actions, holding that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on

---

[2] There is no issue regarding the timeliness of the petition as respondent's answer contains an admission that the petition was timely filed. *See* Doc. 8, p. 1 (admitting the allegations in paragraph 18 of the petition).

the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (internal quotation marks omitted). Accordingly, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* To underscore the high hurdle a petitioner must cross in order to merit habeas relief, the Court reiterated that "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

In order to demonstrate ineffective assistance of counsel, a petitioner must make two showings. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show prejudice, a defendant must show a reasonable probability or substantial likelihood of a different result. *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011). A court need not address both *Strickland* prongs if a petitioner fails to make a sufficient showing on either prong. *See, e.g., United States v. DeGroat*, 102 Fed.Appx. 956, 959 (6th Cir. 2004).

A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. The Sixth Circuit has held that "[s]trategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000). The "range of reasonable applications"

the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (internal quotation marks omitted). Accordingly, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* To underscore the high hurdle a petitioner must cross in order to merit habeas relief, the Court reiterated that "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

In order to demonstrate ineffective assistance of counsel, a petitioner must make two showings. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show prejudice, a defendant must show a reasonable probability or substantial likelihood of a different result. *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011). A court need not address both *Strickland* prongs if a petitioner fails to make a sufficient showing on either prong. *See, e.g., United States v. DeGroat*, 102 Fed.Appx. 956, 959 (6th Cir. 2004).

A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. The Sixth Circuit has held that "[s]trategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000). The "range of reasonable applications"

of the *Strickland* standard "is substantial" so under §2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S.Ct. at 788.

*Juror Bias*

In an opinion cited by the Kentucky Supreme Court in its opinion on direct appeal, the Supreme Court held that to obtain a new trial based on a juror's purportedly false answers during voir dire, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). "To invalidate the result of a three-week trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination." *Id.* at 555. It is that stringent standard petitioner alleges the state courts unreasonably applied.[3]

It is obvious that better practice would have been for the juror to alert the trial court as soon as she recognized Aullman. However, the Supreme Court "has long held that [a litigant] is entitled to a fair trial but not a perfect one, for there are no perfect trials." *Greenwood*, 464 U.S. at 553 (quotation marks and citation omitted). Petitioner has not shown that the Kentucky courts' conclusion that the juror in question's failure to inform timely the trial court was a mistake, not an act of dishonesty, was an unreasonable application of federal law. The Kentucky

---

[3] The Sixth Circuit has cited and applied *Greenwood* to claims of jury bias in criminal cases. *See, e.g., United States v. Abu-Taqa*, 100 Fed.Appx. 462, 467 (6th Cir. 2004).

Supreme Court cited the applicable standard set forth by the Supreme Court and applied that standard to the facts at hand. Indeed, petitioner has not cited to any cases directly on point which the Kentucky court ignored or failed to apply properly. In other words, petitioner has shown that he disagrees with the Kentucky Supreme Court's decision and application of *Greenwood* but he has not met his heavy burden to show that the state court's decision was such an unreasonable application of federal law that it would not be open to debate among fairminded jurists.

In addition, even if the Court, solely for purposes of argument, were to assume that the juror had acted dishonestly, habeas relief would still not be proper as petitioner has not met the second part of the *Greenwood* standard. Petitioner has not cited to any cases to show conclusively that the juror's hypothetical dishonesty would have clearly been sufficient to support a strike for cause. To the contrary, at least one federal court has held in a somewhat analogous situation that the existence of prior business dealings between a juror and a witness for the United States is insufficient to compel an inference of juror bias. *See, e.g., United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir. 1986) ("In this case, the court knew that a juror had prior business dealings with key government witnesses; however, there was no showing of actual bias. While knowledge of this information would have required further inquiry by the court or counsel during voir dire, it certainly does not compel an imputation of inherent bias to the juror as a matter of law.") (quotation marks and citation omitted).

*Jury Instructions*

Petitioner's next argument is that counsel was ineffective for failing to request an instruction on second-degree robbery and the Kentucky Courts erred by holding to the contrary. However, such an argument is based upon Kentucky state law and, as such, is not properly cognizable on federal habeas review. As this Court recently explained in another §2254 case:

> First, an alleged violation of Kentucky state law is not cognizable in a federal habeas proceeding. *See, e.g., Bowling v. Parker,* 138 F.Supp.2d 821, 906 (E.D.Ky.2001), *aff'd* 344 F.3d 487 (6th Cir.2003) ("neither a violation of state law nor a state court's decision applying purely state law may be reviewed by a federal habeas corpus court since any such errors in that regard are not of a constitutional magnitude."). Second, "in this Circuit, the failure to give a jury instruction on a lesser-included offense [in a non-capital case] is not of a character and magnitude to be cognizable on federal habeas corpus review." *David v. Lavinge,* 190 F.Supp.2d 974, 986 (E.D.Mich.2002). *See also Scott v. Elo,* 302 F.3d 598, 606 (6th Cir.2002) ("the Sixth Circuit has held that failure to instruct on a lesser included offense in a noncapital case is not such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.") (citation and quotation marks omitted). In short, petitioner is not entitled to habeas relief.

*Roark v. Meko*, 2013 WL 3107654, at *10 (E.D.Ky. June 17, 2013).[4]

The Kentucky courts analyzed the issue under *Strickland* and reached a conclusion with which petitioner disagrees. However, petitioner must show much more than mere disagreement or an arguable state court error to obtain federal habeas relief. *See, e.g., Harrington*, 131 S.Ct. at 785 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.") (quotation marks and citation omitted). Because he has not

---

[4] The quoted passage is from a United States Magistrate Judge's report and recommendation, which the presiding district judge adopted by simply agreeing that "[w]hether or not Kentucky law requires a jury instruction on the lesser-included offenses is a matter of state law, not properly before this court in a federal habeas proceeding." 2013 WL 3107654, at *3.

shown how the state court's conclusion was an unreasonable application of federal law petitioner's second argument must be rejected.

*Failure to Testify*

Petitioner's final argument is that the state courts unreasonably applied federal law by rejecting petitioner's argument that counsel was ineffective for not letting petitioner testify. To obtain relief on that issue, petitioner must satisfy the heavy burden of showing that the Kentucky courts unreasonably applied the *Strickland* standard. *Harrington*, 131 S.Ct. at 785.

It is unquestioned that petitioner made no contemporaneous representations to the trial court that he wanted to testify, though he showed no reticence to speak up about other matters. *See Raiford*, 2013 WL 132578, at *1, 3 ("On cross-examination, Raiford admitted that he never informed the court that he wanted to testify. Raiford also admitted that during the sentencing phase he had new counsel and, although he addressed the court directly, never indicated that his counsel would not let him testify. . . . Indeed, the record lacked any indication that he insisted on testifying. In fact, Raiford let the court know on several occasions when he wanted something, including when he had a headache. In other words, he was outspoken and not complacent during the trial of the case."). Petitioner's trial counsel testified at the hearing that he advised petitioner not to testify due to petitioner being a convicted felon and that his (counsel's) practice was to inform the court on the record if a client wished to testify against counsel's advice. *Id.* at *2 ("Raiford's trial counsel, the Honorable Herb West, also testified at the hearing. Mr. West indicated that he advised Raiford not to testify in part because he was a convicted felon, a fact that would have undoubtedly been revealed on cross-examination. Mr. West also testified that while preparing for trial Raiford informed him that there was an alternative perpetrator, although further investigation concerning this issue did not lead anywhere. Mr. West noted that Raiford

11

was captured in the getaway car within ten to fifteen minutes after the crime and believed Raiford's testimony would not add to the case. While Mr. West did not specifically remember Raiford insisting on testifying during the trial, it was his practice to put such matters on the record. It was Mr. West's practice that if his client, in this case Raiford, had been adamant in his desire to testify then Mr. West would have approached the bench and told the judge that, contrary to his advice, Raiford wished to take the stand."). Petitioner makes much of trial counsel's apparent statement at the hearing that "maybe" he should have let petitioner testify but, petitioner's argument to the contrary notwithstanding, such an ambivalent statement is by no means sufficient to constitute an admission of ineffectiveness.

The Kentucky courts analyzed the record and utilized the appropriate standards for determining ineffective assistance of counsel. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. 786-87. Though he disagrees with the Kentucky courts' conclusion, petitioner has not satisfied his burden to show that the state courts committed an error of such blinding obviousness and magnitude as to be "beyond any possibility for fairminded disagreement." *Id.* Accordingly, he is not entitled to federal habeas relief.

**Recommendation**

**IT IS RECOMMENDED** that the petition for writ of habeas corpus [Doc. 1] be **denied**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *see also United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005);

*Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

This the 27th day of August, 2014.

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge